Fboessel, J.
On the night of January 27, 1958 Louis Cuomo was shot to death on a streeet corner in Brooklyn during an act of teen-age violence. Defendants, Robert Fasano and Salvatore Monaco, were tried upon a joint indictment which charged them with murder in the first degree in that they willfully and feloniously shot decedent while ‘ ‘ acting in concert and each aiding and abetting the other ”. The jury found each defendant guilty of murder in the second degree. The Appellate Division, Second Department, unanimously (1) affirmed the judgment of conviction with respect to defendant Fasano, and (2) reversed on the law the judgment convicting defendant Monaco, and ordered a new trial as to him. It is from the judgment and the order of the Appellate Division that the present appeals have been taken by defendant Fasano and the People respectively.
*439 The relevant facts, which the jury were entitled to find, are briefly as follows: On the night of the homicide, defendants, both members of a teen-age gang known as the “ Gremlins ”, set out from Fasano’s home with the avowed purpose of “ grabbing ” a member of the “ Ditmas Dukes ”, a hostile gang, so that they could “ hurt ” him, “ give him a beating ”. There had been trouble culminating in fights or 11 rumbles ’ ’ between the two gangs since the preceding Summer, and the reason for defendants’ expedition into the “ Duke territory ” was to avenge a beating which Monaco had received.
On January 18, 1958 defendants met another member of the Gremlins, John D’Orazio, and asked him whether he had a gun. D’Orazio replied that he did, a .22 caliber rifle, and defendants thereupon told him to “ bring it down and cut it down ”. After their meeting D’Orazio went home, and the following day cut approximately 9 inches off the stock and 19% inches off the barrel; this left the weapon about 15 inches long. Approximately a week later, D’Orazio placed the rifle under some papers in an ashean outside a bowling alley, which he thereupon entered “ bragging around that I had a gun ”. When defendant Fasano arrived, unaccompanied by Monaco, D ’Orazio stated that he had thrown the gun into the ashean, which gun Fasano retrieved.
Although Monaco was not specifically aware of it at the time, when defendants left Fasano’s home on the night of the homicide the latter had the sawed-off rifle concealed under his jacket, but while they were walking toward 18th and Coney Island Avenues — the scene of the shooting—Fasano showed Monaco the gun. According to defendants’ statements to the police and the District Attorney, which were not denied and were admitted in evidence without objection, it was their intention to “ grab a Duke, show him the gun and give him a beating ’ ’.
When defendants neared the intersection of Coney Island and 18th Avenues, they saw three cars with Dukes in them and thereupon concealed themselves in a nearby alleyway. The cars drove off; one owned by Adam Gragnani passed the alleyway in which defendants remained hidden. Monaco stated that it was at about this time that Fasano loaded the rifle; he knew that Fasano had ‘ ‘ put the shell in there ’ ’.
Decedent, together with James Autunnale, William Clifford and Nicholas Benvenuto, all members of the Dukes, was in *440 Gragnani’s automobile. According to Gragnani, two other cars containing Dukes were parked at the corner. He testified that they were “ looking to get ” members of the Gremlins because they had received threatening telephone calls from the latter, and because ‘ ‘ they were down to our candy store a week before chasing our cars ”. On the way to the Prospect Park neighborhood where the Gremlins congregated, the three cars separated.
Nicholas Benvenuto testified that he had accompanied decedent and the others in Gragnani’s car to 15th Avenue, the Gremlin’s territory, in order to try to prevent a fight between the two gangs. He also stated there had been a “ bat [sawed-off pool cue], chain, regular junk ” in the car, but that it had been thrown out of the car on the way back to 18th Avenue. William Clifford testified that the purpose of their drive was to see one “ Dennis the Menace ”, who was to tell the Gremlins that the Ditmas Dulces did not want to have any more fighting. Clifford saw no weapons in the car. James Autunnale corroborated Clifford’s version of their ride.
After they had spoken to Dennis, decedent and the other boys returned to their own neighborhood. Gragnani parked his car on the east side of Coney Island Avenue diagonally across from Lord’s Luncheonette located on the northwest corner of Coney Island and 18th Avenues. Decedent and some of the others left the car first and started toward the corner intending to cross over to Lord’s.
As they approached the corner, defendants, who had observed them from their vantage point in the alleyway, charged out of the alley, ran east on 18th Avenue past the luncheonette, crossed Coney Island Avenue, and, when about three feet away from decedent, Fasano took the gun from his jacket and fired the fatal shot. Defendants then ran from the scene and went to Prospect Park Lake, into which they threw the gun.
Mortally wounded, decedent, holding his side, started to run back toward the car in an attempt to escape from defendants ; he was assisted by some of the other boys but collapsed on the sidewalk a short distance away. An autopsy performed the next day revealed that death was caused by a .22 caliber rifle bullet which entered decedent’s left chest near the armpit.
Two teen-age girls, Merrily Jones and Ellen O’Brien, were standing on the corner in front of Lord’s Luncheonette when *441 the defendants ran past them on their way toward decedent. Each identified Fasano as the one who fired the shot. Merrily Jones testified that at the time of the shooting Monaco stood a little behind Fasano; that she did not see decedent do anything, and that there were no other persons behind defendants at that moment. She also said that while in the candy store that afternoon she overheard decedent state that someone wanted to fight them, but that he did not want to have anything to do with it. Ellen O’Brien also testified that there were no boys running after defendants.
Defendants were arrested at about 11:00 p.m. on the night of the homicide and, after approximately two hours of questioning, Fasano related how they had gone out that evening to beat up a Duke, and admitted he had shot the decedent. Monaco was then brought into the room and Fasano told him, “ Sal, I told him the whole story. Now you tell him it ”. Fasano reiterated his statement in the presence of Monaco, which the latter confirmed, admitting that Fasano had shown him the gun on the way to the location. Defendants were kept at the police station until daylight, when they accompanied the officers to the lake to search for the rifle; it was never recovered. Defendants do not claim that they were deprived of food, maltreated or coerced into making the inculpatory statements, which, as noted, were admitted in evidence without objection.
Defendants did not take the stand or call any witness on their behalf. Their defense was that they had gone out merely for the purpose of beating up a Duke, that Fasano carried the gun merely to scare their victim, that they never intended to kill anyone, and that it was not until they were confronted by a large number of armed, hostile Dukes that Fasano became frightened and shot in self-defense. Monaco additionally contended that he was unaware that Fasano was going to shoot the rifle, and that he at no time aided or abetted the latter in the killing.
Defendants’ assertion that they were “ cornered ” or surrounded was disputed by the testimony of Merrily Jones and Ellen O’Brien—both "of whom stated that there was no one behind defendants — as well as by G-ragnani and Clifford. The witness Gragnani did say that he saw decedent with a sawed-off pool cue in his hand after someone yelled “ He’s got a Roscoe ”, but this was denied by Benvenuto, Clifford and Autunnale. *442 Moreover, from defendants’ own statements the jury could have concluded that they rather than the Dukes were the aggressors. Fasano stated: “ We started towards them figuring on giving them a scare and running them off. We started running toward them * * Similarly, Monaco stated “ we figured before they chased us we would run at them. And we ran at them * * #
A further indication of defendants’ aggressive intent at the time of the killing is found in the testimony of John Mills, also a member of the Ditmas Dukes. Shortly before the shooting, defendants ran toward Mills, who saw Fasano put his hand inside his jacket and pull out “ what looked like a bulky gun ”. Mills ran away from defendants who were chasing him, Fasano shouting “ Get that Duke * *
The narrow question presented by the People’s appeal — the only ground for the Appellate Division’s reversal of the Monaco conviction — is whether the Trial Judge committed reversible error when he declined to amplify his main charge (to which no exception was taken) by charging, at defendant’s request, that if the 1 ‘ jury have a reasonable doubt as to whether Monaco was a principal, as you [the court] have described it, they must acquit Monaco ”. The Trial Judge was of the opinion that “ that subject matter has already been covered in my main charge ”. The Appellate Division, however, held this to be error, stating: “ Nowhere in the main charge had the court given the instruction requested.”
Our reading of this record leads us to a different conclusion. The Trial Judge did more than merely recite “ general instructions ” to the effect that guilt must be established beyond a reasonable doubt; indeed, he charged in substance, if not in the exact language, the defendant’s request, and in our view it was not reversible error for him to decline to amplify his charge.
During the course of his main charge, the Trial Judge instructed the jury on at least ten occasions that the burden was upon the prosecution to establish defendants’ guilt beyond a reasonable doubt, and if they entertained such a doubt they must acquit. More specifically, however, he instructed them that the prosecution “ must establish each and every essential ingredient or element of the crime charged beyond a reasonable doubt ”. At the conclusion of his instruction with respect to the element *443 of ‘1 intent to kill ’ ’, the court noted that it was ‘1 the contention of the prosecution that the defendants, acting in concert, aiding and abetting each other in the commission of the crime with which they are charged, wilfully, feloniously and with malice aforethought shot [the decedent] * *
The court then went on to “ discuss what the legal import of the phraseology ‘ acting in concert ’ is ”, and read to the jury the definition of a “ principal ” as contained in section 2 of the Penal Law. After restating that definition so that the jury would be sure to understand it, the court charged them: “ If you find beyond a reasonable doubt that the defendants were engaged in a common purpose or design, and while so mutually engaged, whether by express or implied understanding, then anything done or said by any of them, intended to effectuate their common purpose or design, is binding upon and attributable to all of the parties to the common enterprise ” (emphasis supplied). The jury were thus in effect instructed that they could not deem the acts of Pasano binding upon Monaco unless they found, beyond a reasonable doubt, that at the time “ the defendants were engaged in a common purpose or design ’ \
The court also charged the jury that it was their duty to return a separate verdict as to each defendant, and if they entertained a reasonable doubt ‘ ‘ regarding the guilt of either or any of the defendants on trial, your duty will be to acquit the defendant concerning whom you entertain such reasonable doubt and to convict the defendant concerning whose guilt you entertain no reasonable doubt ”.
The instructions with respect to the prosecution’s contention that defendants were “ acting in concert ” and the court’s discussion of what that phrase meant, including the statutory definition of a “ principal ”, were subsequently reread to the jury at their request after they had been deliberating for approximately five hours. There can thus be no question but that the jury was properly instructed and recognized the importance of passing upon the question of whether Monaco was “ acting in concert ’ ’ and aiding and abetting Pasano at the times in question, and as to the consequence of their finding.
Furthermore, defense counsel in his summation placed great emphasis upon the point that the jury must find, beyond a reasonable doubt, that defendant Monaco did in fact ‘ ‘ aid and *444 abet ” Fasano. He repeatedly told the jury that there was not 11 one iota of testimony that Monaco, as the indictment alleges, aided and abetted Fasano in firing that shot ”, and—addressing himself to the law as he understood it — they must find that, beyond a reasonable doubt, in order to convict Monaco. The prosecutor also discussed Monaco’s alleged aiding and abetting of Fasano, and the court instructed the jury to consider and ‘ ‘ weigh carefully ’ ’ the arguments of counsel. Thus, with the issue so clearly presented to the jury, the court’s refusal to amplify his charge — on the ground that he had already covered the requested instruction—may not be held to constitute reversible error.
We turn now to defendant Fasano’s appeal. Under the court’s charge, to which no exception was taken, the jury were presented with a question of fact which by their verdict they resolved against defendant. The Appellate Division unanimously affirmed, and from the above recital of the facts it is evident that the record contains ample evidence in support of the jury’s verdict.
We find no validity in the contention that it was error for the court to admit the testimony of John Mills with respect to defendants’ attempt to assault him shortly before the shooting of Cuomo. The challenged evidence was admissible under the rule of People v. Molineux (168 N. Y. 264, 293, 305-306) to establish the defendants’ intent and common scheme or plan to assault any member of the Dukes to avenge the assault upon Monaco (see People v. Lieberman, 3 N Y 2d 649).
Defendant Fasano’s final contention is that the court erred in refusing to permit the defense to inspect the prior statements and Grand Jury testimony of the People’s principal witnesses, Merrily Jones, Ellen O’Brien, D’Orazio, Benvenuto and Clifford. Defense counsel requested the District Attorney to submit any statements taken from the witness, as well as the Grand Jury testimony, to the court “ for your Honor to determine whether under the law I may be permitted to see it ”. The applicable law then was the rule of People v. Walsh (262 N. Y. 140). In compliance therewith, the prosecutor submitted the statements and testimony to the court except as to Clifford; after the court informed defense counsel that he had read the material submitted, defense counsel stated: “ Very well. Might I ask that *445 they be marked for identification.” They were so marked, and no further request was made with respect thereto.
Upon these facts the Appellate Division rejected defendant’s contention that the trial court committed prejudicial error under the rule of People v. Rosario (9 N Y 2d 286).
We have compared the statements and Grand Jury testimony with the witnesses’ trial testimony and found no serious discrepancies or inconsistencies. The court’s failure to turn over this material to defense counsel was, therefore, not prejudicial error with respect to this pre-Rosario trial (People v. Hernandez, 10 N Y 2d 774, 776; People v. Turner, 10 N Y 2d 839; People v. Hurst, 10 N Y 2d 939; People v. Pereira, 11 N Y 2d 784).
The situation with respect to the witness Clifford is somewhat different. It does not appear that the court was presented with his prior statement and Grand Jury testimony; it made no ruling with respect thereto and these documents were not marked for identification. Defense counsel never renewed his request. Nevertheless the Appellate Division was of the opinion that error “ was committed, even under these circumstances ” when the court failed to turn over the items to defense counsel, but concluded 11 there was no rational possibility in view of the overwhelming evidence of defendant Fasano’s guilt, that as to him the jury would have reached a different verdict if his counsel had been allowed the use of such prior statements (Code Crim. Pro., § 542).” We agree with the Appellate Division that, even assuming error, it was not sufficiently substantial to warrant a reversal of defendant’s conviction, especially since the witness’ prior statements do not exculpate Fasano.
Accordingly, on the appeal by the People, the order appealed from should be reversed and the case remitted to the Appellate Division pursuant to section 543-b of the Code of Criminal Procedure so that it may pass upon the facts; on the appeal by defendant Fasano, the judgment appealed from should be affirmed.
Chief Judge Desmond and Judges Dye, Fuld, Van Vookhis, Burke and Foster, concur.
In People v. Fasano: Judgment affirmed.
In People v. Monaco: Order reversed and case remitted to the Appellate Division to pass upon questions of fact (Code Crim. Pro., § 543-b).