Bellacosa, J.
(concurring). I concur only out of respect for the doctrine of stare decisis (see, Simpson v Loehmann, 21 NY2d 305, 314 [Breitel, J., concurring]). The recently declared coup de grace that failure to turn over Rosario (9 NY2d 286) material "constitutes per se error requiring that the conviction be reversed” (People v Ranghelle, 69 NY2d 56, 63), growing out of People v Consolazio (40 NY2d 446) and People v Perez (65 NY2d 154), parallels, in my view, the three errant footsteps identified in People v Hobson (39 NY2d 479, 485). Yet, the court persists and I am bound.
The record in this case reveals that documents containing statements of a prosecution witness, which the prosecutor either did not know of or regarded as attorney work product, were not disclosed to the defense pursuant to Rosario. Follow *554 ing conviction, the defense learned of the existence of these materials and moved to set aside the verdict. The trial court denied the motion based upon a record establishing that the statements were relevant only to the credibility of one witness who was, in any event, significantly impeached on cross-examination; that the statements would have had little, if any, effect on the substance of the witness’ testimony which was cumulative in all major respects with the testimony of an undercover police officer; and that the records were duplicative or cumulative to substantial other material properly turned over. In stark contrast to the de minimis nature of the undisclosed material, the People did provide the defense with defendant’s arrest record; the subject arrest report; personal history forms on defendant, a codefendant and this witness; Grand Jury minutes from this case; Grand Jury minutes from a similar case where the witness testified; a tape recording of the sale in this case; the witness’ own report of the sale here; a special agent’s report regarding the sale; a recommendation for dismissal in an unrelated case based on this witness’ poor credibility; two documents from an unrelated prosecution that contained inconsistent statements by this witness; and, the laboratory analysis report from this sale. The Appellate Division originally affirmed the conviction, without opinion (People v Jones, 124 AD2d 1076).
Following the decision in People v Ranghelle (69 NY2d 56, supra), the Appellate Division granted reargument, stating that "there is substantial support for the proposition that the People’s nondisclosure here was truly harmless”, adding that its initial affirmance was based upon the view that the non-disclosed impeachment materials "were, in context, simply cumulative, if not trivial” (People v Jones, 128 AD2d 405, 406). However, compelled by Ranghelle’s per se error rule which requires reversal for any and all Rosario turnover lapses, the Appellate Division vacated its earlier order, reversed the conviction and ordered a new trial.
Ironically, in Rosario itself, this court held that the People are required to disclose all prior statements of its witnesses based on a "right sense of justice” (9 NY2d 286, 289, supra). Judge Fuld wisely concluded, however, in that capital case affirming a conviction for murder in the first degree: "This court is exceeding slow to disregard error as harmless under section 542 of the Code of Criminal Procedure, particularly in a capital case. However in the one before us, we are as convinced as judges may ever be, in view of the overwhelming *555 proof of guilt and the absence of any real inconsistency between prior statement and trial testimony, that the jury would not have decided the case differently even if defense counsel had had the use of the statements in question. In other words, it may not be said that any substantial right of the appellant was prejudiced by the trial court’s erroneous ruling” (id., at 291). Decisions subsequent to Rosario continued to apply harmless error analysis to Rosario violations (see, People v Hawa, 13 NY2d 718; People v Fasano, 11 NY2d 436; People v Pereira, 11 NY2d 784; People v Hernandez, 10 NY2d 774; People v Turner, 10 NY2d 839; People v Hurst, 10 NY2d 939).
People v Consolazio (40 NY2d 446, supra), while noting that Rosario’s harmless error component would no longer be applied to trials after Rosario, nevertheless neutralized the error in that case on its own harmless error-like rationale without invoking the phrase. People v Perez (65 NY2d 154, supra) and People v Ranghelle (69 NY2d 56, supra) completed the detour from the harmless error portion of People v Rosario (9 NY2d 286, supra).
The new per se error rule has elevated the consequences of these nonconstitutional Rosario violations to a level higher than a host of constitutional errors to which harmless error analysis applies (see, Rose v Clark, 478 US 570, 106 S Ct 3101, 3107 [instruction that impermissibly shifted the burden of proof on malice], citing Rushen v Spain, 464 US 114, 119 [denial of right to be present at trial]; United States v Hasting, 461 US 499, 508-509 [improper comment on defendant’s failure to testify]; Moore v Illinois, 434 US 220, 232 [admission of witness identification obtained in violation of right to counsel]; Milton v Wainwright, 407 US 371 [admission of confession obtained in violation of right to counsel]; Chambers v Maroney, 399 US 42, 52-53 [admission of evidence obtained in violation of the 4th Amendment]). This court’s new rule prohibits attempts by the courts to "determine whether any prejudice accrued to the defense”, and declares "the People’s good-faith effort to locate, identify, and discover all Rosario material does not excuse their failure to produce” (People v Ranghelle, 69 NY2d 56, 63, supra).
As the People observe in their brief, no other jurisdiction has a Ranghelle-type rule. Indeed, the principle enunciated in Ranghelle is analogous to the notorious Exchequer rule from the courts of England in 1830, which was recognized at one *556 time by a majority of jurisdictions in this country. This rule created a per se right to a new trial for the defendant upon an erroneous evidentiary ruling, regardless of how insignificant (1 Wigmore, Evidence § 21, at 884-888 [Tillers rev 1983]). The rule was criticized as having "done more than any other one rule of law to increase the delay and expense of litigation, to encourage defiant criminality and oppression, and to foster the spirit of litigious gambling * * * Just so long as an erroneous ruling on evidence, however trifling, is described by the highest judges (and in many courts it habitually is) as 'working a reversal’, just so long will the reproach of technicality and futility mark our litigation” (1 Wigmore, Evidence § 21, op. cit, at 891). Of course, that rule has since been abandoned almost everywhere. But, we now have our own modern version.
A concern, with a coincidental and ironical twist, is that People v Ranghelle (supra), People v Perez (65 NY2d 154, supra), and to a lesser extent People v Consolazio (40 NY2d 446 [per Jones, J.], supra), even skew away from People v Crimmins (36 NY2d 230 [per Jones, J.]) in which Rosario was cited as an example of a nonconstitutional issue to which harmless error analysis applied (id., at 240).
Thus, good faith, unintentional and trivial lapses by the People in failing to disclose even de minimis pretrial material, inevitably result in reversal by adherence to an important rule taken now to an extreme (see, People v Havelka, 45 NY2d 636, 642). Notably, the court charts this course with respect to an aspect of the trial collateral, albeit important, to guilt or innocence — credibility. It rules that no quantum of compliance, save absolute, will be tolerated.
This relatively new absolute rule even blinks the legislative direction contained in CPL 470.05 (1) (the successor to Code of Criminal Procedure § 542 expressly adhered to in Rosario) that "[a]n appellate court must determine an appeal without regard to technical errors or defects which do not affect the substantial rights of the parties”. It must be supposed that the court overrides the statutory prescription by the fiat that all Rosario errors affect "substantial rights” because the court says so. Since the court is the final word, that may be so, even if it is also tautological. The finding in both courts below that the particular nondisclosure was truly harmless, merely duplicative and trivial, accents the extravagance of a per se rule made by a fallible institution which tolerates no imperfection in the law enforcement authorities whose conduct they gov *557 ern. While the mission of the courts is to render justice, the "right sense of justice” referred to in Rosario itself implies an evenhandedness, not the imbalance created by a per se rule of this kind.
There should be no mistake concerning my fundamental and strong support for the Rosario rule and its importance in fairness and in adversarial advocacy affecting criminal prosecutions. Thus, if in this case there were the slightest hint of prosecutorial manipulation, advantage-seeking, lack of good faith, or significant prejudice to defendant’s rights; if there were not a reasonable explanation and excuse; and if this prosecutorial lapse were, even on an instant replay, deemed to have contextually, potentially and prejudicially affected the outcome and the fairness of the procedures affecting this defendant’s trial rights, then I would unqualifiedly join in undoing the conviction. In any of those instances, the entire law enforcement chain must maintain a completely clean act and Rosario is a powerful prophylaxis to that end. But none of these supposed things are present in this case and won’t be in many cases yet to come. Indeed, the opposite is true. Yet, the court has uprooted the Rosario foundation — fairness—and has sown in its place a test of perfection. "[T]aking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee” (United States v Hasting, 461 US 499, 508-509, supra).
A last observation of practical consequences is necessary. The new per se error rule unavoidably plants an uncertainty into every tried criminal case. It is a law enforcer’s nightmare and a perpetrator’s delight. Insofar as the rule is not constitutionally rooted, I believe it would be useful for the Legislature to consider a specification in CPL 470.05 and article 240, especially CPL 240.20 and 240.45, overcoming the per se-ness of this exalted court-made rule.
I close as I opened. The court conclusively adheres here to its per se rule so I join in the result only, having stated these separate views (see, Simpson v Loehmann, 21 NY2d 305, supra).
Chief Judge Wachtler and Judges Simons, Kaye, Alexander and Titone concur with Judge Hancock, Jr.; Judge Bellacosa concurs in result in a separate opinion.
Order affirmed.